UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

RICHARD WARD,

    Plaintiff

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

    Defendant.

_____/

**COMPLAINT FOR DAMAGES**

    The Plaintiff, RICHARD WARD, hereby sues the Defendant and files this Complaint for Damages and says:

**THE PARTIES AND JURISDICTION**

    1.    This is an action for damages that exceed $75,000 exclusive of interest, costs, and attorney's fees.

    2.    **THE PLAINTIFF.** The Plaintiff, RICHARD WARD, is sui juris, a resident of Joplin, Missouri, and is a citizen of the state of Missouri for purposes of diversity of citizenship under 28 U.S.C. § 1332.

    3.    **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line), is incorporated in the country of Panama but does business in the State of Florida and at all times material hereto was and is doing business in Miami Dade County, Florida. The Defendant is

1

a citizen of Florida for purposes of diversity of citizenship under 28 U.S.C. § 1332. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence and incident occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

> (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and or
>
> (b) Had an office or agency in this state and/or county; and/or
>
> (c) Engaged in substantial activity within this state; and/or
>
> (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF THE INCIDENT**. The incident occurred on January 21, 2017.

8. **LOCATION OF THE INCIDENT.** The incident occurred in cabin number 2467 onboard the vessel CARNIVAL *Conquest*, a ship in navigable water while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by the general maritime law.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10. **DESCRIPTION OF THE INCIDENT.** The Carnival *Conquest* is a cruise ship which Carnival had custom built to specifications and designs which were made by or under the supervision and participation of Carnival. This ship was constructed in a shipyard under the supervision and with the participation of onsite Carnival personnel. The Carnival *Conquest* is a part of the Conquest Class which includes the Carnival *Conquest*, Carnival *Glory*, Carnival *Valor*, Carnival *Liberty*, and Carnival *Freedom*. The Conquest class is the same design as the Destiny class of ships with the modification only that the Conquest class was lengthened, and the facilities are expanded but the staterooms are identical to the staterooms on the Destiny class ships, which include the Carnival *Destiny*, Carnival *Sunshine*, and Carnival *Triumph*.

11. The Carnival Conquest was first christened on November 19, 2002. Carnival has operated and maintained the ship continuously since that time. Carnival has operated and maintained the other ships in Conquest and Destiny classes, listed above, continuously since the time when each of those ships was first built and put into service. And Carnival also custom built to specifications and designs which were made by or under the supervision and participation of Carnival all of the Conquest and Destiny class ships, listed above. The construction of these ships

was under the supervision and with the participation of Carnival personnel who were stationed onsite in the shipyard during construction.

12. The *Conquest* has a capacity for 2,974 passengers. Like all of the Carnival Cruise Line ships, the *Conquest* assigns cabins with bathrooms to its passengers. Inside the bathroom is a toilet, shower, and sink.

13. Carnival knew before this incident that the floor in the passenger's bathroom- on this and on the other Carnival ships listed above-- is extremely and unreasonably slippery and dangerous when wet. Carnival was also well aware of the fact that the *Conquest* – and the other Carnival ships listed above-- had plumbing, air-conditioning, and other operating systems which would malfunction and cause water to leak and flood the bathrooms in the passengers' cabins. The leaks and flooding were an ongoing, continuous problem in all of the passenger's cabins on this ship and others in the fleet and in the same class of ships as the Carnival *Conquest*.

14. Carnival failed to properly maintain the plumbing, air-conditioning and other operating systems in the cabins on this ship and the ships in the 2 classes of ships referenced above. Carnival made this choice because the *Conquest* was about to go into dry dock for repairs and Carnival wanted to save money by not repairing the plumbing, air-conditioning and other operating systems and not making the rooms safe for when flooding and leaking does occur.

15. Despite all of this notice, both actual and constructive, which Carnival had of the problem plumbing, air-conditioning and other operating systems onboard the *Conquest*, in cabin number 2467, and in other cabins on this ship, and in all cabins on all of the ships in the 2 related classes, Carnival chose a bathroom tile which was unreasonably slippery when wet, Carnival chose not to post any signs or warn its passengers that the bathroom floors could be extremely and unreasonably slippery when wet, Carnival chose not to add any stripping or any other skid resistant

material to the bathroom floor, Carnival chose not to post any signs or warn its passengers that the *Conquest* was experiencing problems with their plumbing, air-conditioning, and other operating systems that could lead to water and flooding on the bathroom floor in the passengers' cabins, and Carnival chose not to maintain reasonably under these circumstances the plumbing, air-conditioning, and operating systems onboard the *Conquest.*

16. Carnival also had at least constructive notice of and knowledge about the accumulation of water from leaking pipes in the ceiling above the bathroom of the cabin of passenger Ward. The water covered the entire bathroom floor and had accumulated there for hours. And after this incident but on the same cruise, Carnival personnel attempted repairs of the piping and in fact removed several feet of piping. In fact, long before the subject cruise, this ship had been scheduled to go into dry dock to repair- among other things- the piping.

17. When passenger Ward walked into the bathroom that night, his foot slipped on the soaking wet bathroom floor sending his body back and down crashing his head against the solid wood door of the bathroom and against the floor or threshold to the bathroom. The fall caused passenger Ward to suffer a cervical (neck) vertebrae injury requiring a 3 level fusion surgery and caused Ward to suffer a traumatic brain injury.

## COUNT I: NEGLIGENCE

18. The Plaintiff, Richard WARD, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 17, above.

19. **DUTIES OWED BY THE DEFENDANT**. The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So. 2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec*

5

*v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248 (Fla. 3d DCA 1985). The Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). *Vierling v. Celebrity Cruises*, 339 F. 3d 1309, 1319-20 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is nondelegable, and that even the 'slightest negligence' renders a carrier liable). The cruise line has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F. 3d 1309, 1319 (11th Cir. 2003).

20. Carnival breached those duties and was negligent by failing to properly maintain the plumbing, air-conditioning, and/or other operating systems on the *Conquest* and to prevent the plumbing and the pipes in the bathroom in cabin 2467 from leaking water and from failing to keep

the bathroom in cabin 2467 clean and dry; failing to warn of the plumbing, air-conditioning and operating systems problems on the *Conquest*; failing to warn that the bathroom floor was extremely slippery when wet; failing to inspect for and repair the plumbing, air-conditioning and other operating systems pipes on the cruise ship and in cabin 2467; failing to properly and reasonably and safely prevent dangerous conditions such as the one in this case; allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries; providing negligent maintenance to the plumbing, air-conditioning, and other operating systems pipes or to the premises; failing to otherwise maintain the plumbing, air-conditioning, and other operating systems pipes, and the premises in a safe and reasonable manner; failing to place the ship in dry dock earlier so that it could repair the plumbing, air-conditioning and other operating systems pipes on the vessel; designing and building and not changing or adding slip resistant materials to the bathroom floor, and prevent the floor from being slip resistant; allowing substances and water to accumulate on the bathroom floor, failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence; failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one this case; and failure to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

21.    The Defendant created a dangerous slippery condition on the subject ship and allowed the dangerous condition to exist thereby causing an accident on the date referenced above in which the Plaintiff was severely injured.

22. Carnival either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

23. Carnival had constructive knowledge of the dangerous condition by, *inter alia*, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition, including that the condition existed throughout the ship and was apparent to any Carnival employee who worked on the ship, especially to those in the maintenance department and housekeeping; (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity, and/or the fact that other Carnival passengers, including passenger, Lori Ward (no relation to the Plaintiff Richard Ward in this case) had previously reported similar incidents to Carnival. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

24. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty for negligent methods of operations. Therefore, no notice to the Defendant is required.

25. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

26. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

27. The Defendant's negligence proximately caused the permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are

not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past, and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

Dated: December 20, 2017					Respectfully submitted,

By:     *s/ John H. Hickey*
**JOHN H. HICKEY**, **ESQ.**
Florida Bar No.: 305081
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*