United States District Court
for the
Southern District of Florida

| Richard Ward, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 17-24628-Civ-Scola |
| | ) | |
| Carnival Corporation, Defendant. | ) | |
| | ) | |

**Opinion Order Denying Motion for Summary Judgment**

Plaintiff Richard Ward ("Ward") brings this negligence action seeking to recover for injuries sustained while a passenger aboard the *Conquest*, a cruise ship operated by Defendant Carnival Corporation ("Carnival"). Essentially, Ward claims that a water pipe burst above his cabin bathroom one evening, dripped through a vent in the ceiling and formed a puddle, which he slipped on and fell, causing head and neck injuries. Boiled down, the claim appears to be two-fold: That Carnival negligently maintained the *Conquest*'s plumbing, and that Carnival negligently failed to warn of the ship's faulty plumbing despite knowing for years that it was in disrepair.

Now before the Court is a motion for summary judgment filed by Carnival. (the "Motion," ECF No. 21.) Having considered the Motion, all supporting and opposing submissions, the parties' evidentiary proffer and the applicable law, the Court **denies** the Motion (**ECF No. 21**) as follows.

1. **Background**
   A. **The Undisputed Material Facts**

On January 22, 2017, Ward was a passenger onboard the *Conquest*, a cruise vessel operated by Carnival. (ECF Nos. 21, 25 at ¶¶ 2.) He was assigned stateroom 2467, an interior cabin that contains a private bathroom. (*Id.* at ¶¶ 4.) Ward made three trips to the stateroom bathroom that day. (*Id.* at ¶¶ 5, 7, 8.) On the first two trips, Ward did not observe water on the bathroom floor or hear anything dripping. (*Id.* at ¶¶ 5-7.)

The third trip was different. Between 5:00 and 5:30 a.m., Ward opened the bathroom door, "stepped up with [his] right foot" and "immediately los[t] ground with it as it was sliding." (ECF No. 21-3 at 212:14-17.) He "[t]ried to break [his] fall by catching [him]self," but failed, instead "smashing [his] head against the door and then against the floor." (*Id.* at 212:21-25); (*see also* ECF No. 26-2 at 12:10-15.) At that point, Ward "remember[s] being in a puddle of

water," "virtually saturated from the waist down." (*Id.* at 213:3-4.) The noise created by the fall awoke Ward's significant other, Janice Dunn, who was sleeping in the stateroom. (ECF No. 26-1 at 64:12-16.) She observed that Ward "was wet all over from the waist down" and that there was "probably a half inch" of "water covering the floor" of the bathroom. (*Id.* at 66:1-9.)

Thereafter, Ward noticed "water coming from . . . a vent pipe" or "exhaust fan" in the bathroom ceiling. (ECF No. 21-3 at 213:10-22; 227:6-11.) Carnival's assistant plumber received notice of the incident the same day and, upon inspection, determined that a cracked freshwater pipe leaked water into the bathroom through an exhaust vent in the ceiling. (ECF No. 21-5 at 68:1-23; ECF No. 27-1.) As a result of the accident, Ward suffered traumatic brain injury, broken teeth and cervical neck pain, requiring fusion of the C3 through C6 discs, amongst other injuries. (ECF No. 21-2 at ¶ 12.)

According to Carnival's corporate representative, it is not reasonable for a passenger to expect leaks in bathroom plumbing. (ECF No. 26-2 at 34:2-22.) And Carnival agrees that plumbing leaks are repaired to prevent passengers from getting hurt. (ECF No. 21-6 at 41:6-10.)

In its internal training materials, Carnival identifies Cabin bathrooms as an "area of most potential slip and falls." (ECF Nos. 25, 37 at ¶¶ 77; ECF No. 29-5.) And passengers do fall in cabin bathrooms; Carnival's internal records indicate that at least sixteen *Conquest* passengers lodged complaints to the company about such incidents between December 2013 and January 2017. (ECF Nos. 29-3, 29-4.)

The *Conquest* went into service in 2002. From that time until Ward's accident in January 2017, Carnival never renovated the plumbing on the ship's main deck. (*Id.* at 26-2 at 17:21-24, 21:5-9.)

Over time, cabin flooding became a problem on the *Conquest*. From late-2013 through mid-2015, "cabin plumbing" or "cabin flood[ing]" was consistently identified as a "top ten issue[]" on the *Conquest*. (ECF No. 28-2 at pp. 6-62, date range Nov. 23, 2013 – May 22, 2015.) Indeed, the "majority" of passenger complaints related to "cabin" "flooding." (*Id.* at p. 8, dated June 7, 2015.) In the months preceding Ward's accident, Carnival acknowledged that the *Conquest* "ha[d] a lot of plumbing issues," (ECF No. 28-2 at p. 10, dated July 1, 2016); more specifically, "[l]eakage issues in guest cabins," (*id.* at p. 2, dated Sept. 3, 2016).

Ship maintenance records tell a similar story. From 2014 to 2017, Carnival documented 139 "high" or "top urgent" work orders to address leaks from the ceilings of passenger staterooms. (ECF No. 28-1.) Stateroom 2467 is included on that list at least three times. (*Id.* ("guest reported leakage in bathroom").) Many of these work orders involved leaks over stateroom

bathrooms. (*See, e.g., id.* ("reported leaking from exhaust vent in bathroom"; "leaking in bathroom from exhaust"; "reported leaking from ceiling in bathroom").)

There is no "hi-tech" method of determining the presence of a leak on the ship or anticipating when one might happen. (ECF Nos. 21, 25 at ¶¶ 34-37, 58; ECF No. 21-8 at 46:4-6.) Nonetheless, Carnival does not conduct weekly or monthly inspections of plumbing to check for leaks. (ECF Nos. 25, 37 at ¶¶ 93.) Rather, Carnival repairs broken pipes on the *Conquest, ad hoc,* whenever a leak occurs. (ECF No. 26-2 at 33:4-18.)

In late 2017, after Ward's accident, Carnival placed the ship in drydock to repair its "gray water" plumbing system. (ECF No. 21-6 at 71:1-8.)

### B. The Shotgun Complaint

Ward filed this action on December 20, 2017, asserting one count for "negligence." (ECF No. 1.) Subsumed within that single claim, in classic shotgun fashion,[1] are myriad purported "breaches" by Carnival that raise a host of distinct theories of liability, including for negligent maintenance, failure to warn, negligent design and negligent mode of operation. (*Id.* at ¶ 20.) Specifically, Ward alleged that Carnival breached its duty of care "and was negligent by":

> failing to properly maintain the plumbing, air-conditioning, and/or other operating systems on the Conquest and to prevent the plumbing and the pipes in the bathroom in cabin 2467 from leaking water and from failing to keep the bathroom in cabin 2467 clean and dry; failing to warn of the plumbing, air-conditioning and operating systems problems on the Conquest; failing to warn that the bathroom floor was extremely slippery when wet; failing to

---

[1] *See, e.g., Kulakowski v. Royal Caribbean Cruises, Ltd.*, No. 16-21375, 2017 WL 237642, at \*\*1-2 (S.D. Fla. Jan. 18, 2017) (King, J.); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337, n.2 (S.D. Fla. 2012) (Moore, J.); *Ciethami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349-50 (S.D. Fla. 2016) (Williams, J.); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (Ungaro, J.); *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at \*5-\*6, n.2 (S.D. Fla. June 5, 2012) (Scola, J.); *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, \*3 n.3 (S.D. Fla. Dec. 7, 2015) (Lenard, J.); *Doe v. NCL (Bahamas) Ltd.*, 2016 WL 6330587, at \*3 (S.D. Fla. Oct. 27, 2016) (Ungaro, J.); *Gharfeh v. Carnival Corp.*, No. 17-20499, 2018 WL 501270, at \*3, \*6-\*7 (S.D. Fla. Jan. 22, 2018) (Goodman, Mag. J.); *Wohlford v. Carnival Corp.*, No. 17-cv-20703, 2017 WL 7731225, at \*\*2-4 (S.D. Fla. May 11, 2017) (Ungaro, J.); *but see Steffan v. Carnival Corp.*, No. 16-cv-25295, 2017 WL 7796726, at \*3 (S.D. Fla. May 22, 2017) (Altonaga, J.).

> inspect for and repair the plumbing, air-conditioning and other operating systems pipes on the cruise ship and in cabin 2467; failing to properly and reasonably and safely prevent dangerous conditions such as the one in this case; allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries; providing negligent maintenance to the plumbing, air-conditioning, and other operating systems pipes or to the premises; failing to otherwise maintain the plumbing, air-conditioning, and other operating systems pipes, and the premises in a safe and reasonable manner; failing to place the ship in dry dock earlier so that it could repair the plumbing, air-conditioning and other operating systems pipes on the vessel; designing and building and not changing or adding slip resistant materials to the bathroom floor, and prevent the floor from being slip resistant; allowing substances and water to accumulate on the bathroom floor, failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence; failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one this case; and failure to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

(*Id.*)[2] That is not a "simple, concise, and direct" allegation. Fed. R. Civ. P. 8(d). Were it not the eve of trial, the Court would strike the Complaint as a shotgun

---

[2] This form of pleading appears standard in cruise personal injury suits. (*See* n.1, *supra*.) It is a problem. Each theory of negligence is governed by a distinct body of law and requires different evidentiary showings. *See, e.g., Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 907-10, n.1, n.2, n.3 (11th Cir. 2017); *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 955 n.8 (11th Cir. 2016). When pled together as one count, like here, the amorphous "negligence" claim becomes a moving target, shifting theories liability to avoid summary judgment. *See, e.g., Tesoriero v. Carnival Corp.*, No. 16-21769, 2017 WL 8895347, at **3-4 (S.D. Fla. Sep. 22, 2017) (Torres, Mag. J.) (summarizing plaintiff's argument that defendant's failure to address each theory of negligence pled under a single "negligence" count defeated summary judgment). This leaves the Court uncertain of the completeness of the evidentiary record before it, making determinations of entitlement to summary judgment exceedingly difficult. *See Frasca*, 654 F. App'x at 950, 954-55 (reversing *sua sponte* grant of summary judgment for defense on negligent maintenance claim that was mentioned in the "introductory section" of the complaint and lumped into a single "negligence" count that also asserted, "among other things," a claim for failure to warn); *but see also Malley*, 713 F.

pleading. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23, n.13 (11th Cir. 2015) (a complaint is a shotgun pleading where it fails to "separate[] into a different count each cause of action or claim for relief"); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018).

But because this case is so advanced, and because Carnival never moved to dismiss or strike on that basis, the Court will analyze the claim as best it can on the record before it.

### C. The Motion

Carnival moves for summary judgment on the negligence claim, arguing: (1) that no reasonable juror could find that Carnival breached its duty of reasonable care in its maintenance of the potable water line above Ward's cabin, (ECF No. 21 at pp. 11-14); (2) that no evidence exists to support Carnival having actual or constructive notice that the potable water line above Ward's cabin was about to break, (*id.* at pp. 14-16); (3) that there is no evidence that Carnival had actual or constructive notice that the bathroom floor in Ward's stateroom was an "unreasonably safe condition," (*id.* at pp. 16-19); (4) that there is no dispute of material fact that the source of water on the bathroom floor was "open and obvious," such that Carnival had no duty to warn, (*id.* at pp. 19-20).

Ward opposes the Motion, (ECF No. 25), on four principal grounds: (1) that a genuine dispute of material fact exists as to whether Carnival failed to reasonably maintain its plumbing and inspect for leaks, arguing that "Carnival has no real system to prevent leaks" and "should have created a reasonable maintenance and inspection system" for ship plumbing, (*id.* at pp. 12-14); (2) that Carnival had actual or constructive notice that its plumbing system and bathroom floors were unreasonably dangerous, (*id.* at pp. 14-18); (3) that a reasonable juror could find that the slipperiness of the bathroom floor when wet was not "open and obvious," (*id.* at pp. 18-20); and (4) that Carnival had a duty to warn Ward that bathroom floors can be slippery when wet or that the ship's plumbing may leak, (*id.* at p. 20).

Carnival filed a reply brief generally contesting Ward's arguments in opposition to summary judgment. (ECF No. 37.)

---

App'x at 909-10, n.1, n.2, n.3 (affirming summary judgment for defense on single "negligence" claim, and analyzing independently various theories of negligence pled under that count and rejecting arguments that the district court failed to address one theory of negligence because, "[a]rguably, Plaintiff did not sufficiently raise" that claim below).

## 2. Summary Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. Because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses," the nonmovant's evidence must be significantly probative to support the claims. *Id.*; *Anderson*, 477 U.S. at 249. The Court will not weigh the evidence or make findings of fact. *Id.*; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

## 3. Discussion

The Court first considers its jurisdiction and the applicable body of law. Federal subject matter jurisdiction exists in this case under 28 U.S.C. § 1333, as the claims arise from a slip and fall aboard a vessel operating in navigable waters, (ECF No. 1 at ¶ 8); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989), and 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.00, (ECF Nos. 1, 6 at ¶¶ 2-4, 17).[3] The Defendant's jury demand is therefore proper, *Caron v. NCL*

---

[3]  Although Ward fails to allege Carnival's principal place of business, the Court takes notice of judicial opinions of this circuit identifying that location as Miami, Florida. *See, e.g., Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 935 (11th Cir. 2005) (stating that "Carnival Corporation" is a "Panamanian

*(Bahamas), Ltd.*, 910 F.3d 1359, 1366 (11th Cir. 2018), and the Court will apply federal maritime law to its review of the Motion, *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case.").

"Under the maritime law of negligence, [Ward] must prove that 1) [Carnival] had a duty to protect him from a particular injury, 2) [Carnival] breached that duty, 3) [Carnival's] breach proximately caused his injury, and 4) he incurred damages." *Caron*, 910 F.3d at 1369 (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

### A. Reasonable Jurors Could Find that Carnival's Plumbing Maintenance, or Lack Thereof, was Negligent

Carnival seeks summary judgment on the second element of the "negligence" claim, arguing that no reasonable juror could find that it breached a duty of care owed to Ward. (ECF No. 21 at pp. 11-14.) The Court disagrees.

"Under maritime law, the owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). "Breach of duty" is an "issue[] of fact normally within the province of the jury." *Franks v. Bolden*, 774 F.2d 1552, 1556 (11th Cir. 1985).

The crux of Carnival's argument is that there is no means of remotely detecting or predicting leaks, that there are miles of pipes on the *Conquest,* that accessing piping in bathroom ceilings is burdensome and time-consuming, and that, in all, it would be "close to impossible" for Carnival to have earlier detected or prevented the leak at issue in this case. (ECF No. 21 at pp. 11-14.) Put differently, Carnival argues that Ward is attempting to impose on it a heightened standard of care.

Ward's argument in opposition is summarized as follows: "Carnival should have created a reasonable maintenance and inspection system to ensure its plumbing above passenger cabins is not allowed to get so bad that it floods bathrooms." (ECF No. 25 at p. 13.) In other words, the negligent maintenance claim appears to have morphed into one for negligent mode of operation. *See Malley*, 713 F. App'x at 910 (identifying "negligent mode of operation" as a claim under Florida law "that a business created an unsafe

---

corporation with its principal place of business in Miami, Florida."); *Crist v. Carnival Corp.*, 410 F. App'x 197, 200 (11th Cir. 2010) (same); Fed. R. Evid. 201(b), (c).

environment through the manner in which it conducts its business," "focus[ing] on the company's general policies and operations [and] not on the specific incident in which the plaintiff was injured"). "No court has ever held that this claim exists in federal admiralty law." *Id.* Carnival did not argue this point in its papers.

But that matters not, because a dispute exists as to whether Carnival, in the exercise of due care, should have replaced the *Conquest*'s failing plumbing system—potable, fresh or gray water—before the incident at issue. (*See* ECF No. 1 at ¶ 20 (alleging that Carnival was negligent in "failing to place the ship in dry dock earlier so that it could repair the plumbing").) The undisputed facts show that in the months and years preceding Ward's accident, Carnival knew that the *Conquest* had "a lot of plumbing issues," and that cabin flooding was a major problem and principal subject of passenger complaints. Indeed, there were 139 work orders over that period to repair leaks from stateroom ceilings, including from very bathroom at issue in this case. Yet, Carnival took no action to replace the plumbing or otherwise prevent leaks from occurring, instead repairing them *ad hoc.*

Carnival's protests of a burdensome, heightened duty are unavailing. Conducting preventative maintenance to provide a ship with working plumbing is not a heightened standard of care, and cost-benefit determinations are appropriately left in the boardroom. Here, the question is whether Carnival was negligent in not taking action, over the course of years, to prevent an aging and deteriorating plumbing system from repeatedly breaking and leaking into passenger staterooms, including room 2467. From the view of this Court, a reasonable juror could find that Carnival was, and that it was just a matter of time before someone got hurt.

Carnival's request for summary judgment on its breach argument is **denied**.

### B. Whether Carnival Had Notice of a Dangerous Condition is a Question of Fact

Next, Carnival asserts that no reasonable juror could find that it had actual or constructive notice of the cracked pipe or slipperiness of the bathroom floor. (ECF No. 21 at pp. 14-19.) Ward does not dispute that Carnival did not have actual notice of the cracked pipe prior to Ward's accident, and only argues for constructive notice. (ECF No. 25 at p. 14.)

The maritime negligence "standard of care 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition.'" *Taiariol v. MSC Crociere, S.A.*, 15-cv-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016) (Moore, C.J.) (quoting *Keefe*, 867 F.2d

at 1322)) *aff'd* 677 F. App'x 599 (11th Cir. 2017) (same); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("In this circuit, the maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."). "Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous." *Malley*, 713 F. App'x at 908.

To demonstrate constructive notice, a plaintiff may invoke the "substantial similarity" doctrine and "point to previous injuries or show that the defendant previously warned of the danger." *Id.*; *Sorrels*, 796 F.3d at 1287. That doctrine "does not a require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels*, 796 F.3d at 1287.

Questions of fact exist as to whether Carnival knew or should have known that leaks from stateroom bathroom ceilings are dangerous. Indeed, Carnival's chief plumber agrees that leaks are repaired to insure that passengers do not get hurt, (ECF No. 21-6 at 41:5-24); Carnival knows that cabin bathrooms are one of the most likely areas for passenger "slip and falls," (ECF Nos. 25, 37 at ¶¶ 77; ECF No. 29-5); and at least sixteen passengers have complained to Carnival about slipping and falling on cabin bathroom floors. (ECF Nos. 29-3, 29-4.)

With respect to notice of the leak, Carnival knew from at least late 2013 that cabin plumbing and flooding were top ten issues on the *Conquest*. (ECF No. 28-2 at pp. 6-62, date range Nov. 23, 2013 – May 22, 2015.) Corporate minutes in the months leading up to Ward's accident also document a plumbing system in a state of disrepair. (*Id.* at p. 10, dated July 1, 2016 (the "ship has a lot of plumbing issues"); *id.* at p. 2, dated Sept. 3, 2016 (identifying "[l]eakage issues in guest cabins"); *id.* at p. 8, dated June 7, 2015 (acknowledging that the "majority" of complaints relate to cabin "flooding").) And there are also the hundreds of work orders for repairs to stateroom ceiling leaks (including the bathroom of room 2467) from 2014 through 2017. (ECF No. 28-1.) Based on that, a reasonable juror could find that Carnival knew or should have known that the plumbing above staterooms, like Ward's, was deteriorated and that a duty existed under the circumstances to warn passengers of that fact.

On consideration, the Court easily finds a dispute of material fact as to Carnival's notice of a dangerous condition. (ECF No. 28-1.) The request for summary judgment on that issue is therefore **denied**.

### C. Whether The Broken Pipe Was Open and Obvious Is a Dispute of Material Fact

Finally, Carnival argues that it is entitled to summary judgment on the "negligence" claim because the puddle on which Ward slipped was "open and obvious," thus abrogating any duty of Carnival to warn. (ECF No. 21 at pp. 19-20.) Ward argues that the dangerousness of the condition was not open and obvious, relying on the expert report of Dr. Ronald Zollo, who conducted a "wet test" of the bathroom floor in room 2467. (ECF No. 25 at pp. 18-20.)

"A defendant cannot be liable for failure to warn if the risk-creating condition is open and obvious to a reasonable person." *Malley*, 713 F. App'x at 908. "To determine whether a condition is open and obvious, th[e] Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition." *Id.* (citing *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015) (Moore, C.J.); *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015) (Moore, C.J.)). "The Court focuses on what an objectively reasonable person would observe and does not take into account the plaintiff's subjective perceptions." *Id.* (citing *Lugo*, 154 F. Supp. 3d at 1345–46).

Without addressing the parties' arguments on the slickness of the bathroom floor, the Court holds that a reasonable juror could find the broken pipe was a "risk-creating" or "dangerous" condition that caused Ward's injuries. *Id.* And a genuine dispute of material fact exists as to whether an objectively reasonable person "would have observed" the broken pipe, running above the bathroom ceiling, "and appreciated the nature of the condition." *Id.* As a result, the Court **denies** Carnival's request for summary judgment on its "open and obvious" argument.

### 4. Conclusion

In sum, the Court **denies** Carnival's motion for summary judgment (**ECF No. 21**) in its entirety.

**Done and ordered**, in Chambers, in Miami, Florida on January 28, 2019.

Robert N. Scola, Jr.
United States District Judge